UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


ALISON ETHIER,                    )
            Plaintiff,     )
                                  )
      v.                          )
                                  )
RONALD SAVARIA,                   )          C.A. No. 05-10174-MLW
EBONY WARLAND, CHARLES  )
WARLAND, & BROTHER,        )
NEW BEDFORD POLICE           )
DEPARTMENT,                    )
L. CABRAL & G. FORTES      )
            Defendants      )


MEMORANDUM AND ORDER

For the reasons stated below 1) Plaintiff's Application to Proceed Without Prepayment of Fees is Allowed; 2) Plaintiff's Motion for Preliminary Injunctive relief is Denied; 3) Plaintiff's motion for appointment of counsel is Denied; and 4) Plaintiff's shall show cause, within thirty-five (35) days of this Memorandum and Order, why her claims against Defendants should not be dismissed for the reasons stated herein.

BACKGROUND

On January 20, 2005, Plaintiff, Alison J. Ethier, a resident of New Bedford, MA, filed a barely lucid 44 page self-prepared complaint containing a laundry list of various statutory and common-law causes of action against 1) her

1

landlord, Ronald Savaria ("landlord"); 2) her upstairs neighbors, Ebony and Charles Warland, and an unidentified "brother" ("neighbors"); and 3) the New Bedford Police Department (Officers L. Cabral and G. Fortes)(Complaint, page 1). Although not named as a defendant, she also seeks relief from the New Bedford Housing Authority (NBHA).

The Complaint alleges, *inter alia*, violations under the Fair Housing Act (FHA), Americans with Disabilities Act (ADA), RICO, §1983 Civil Rights, OSHA, The Clean Air Act, as well as various state-law claims including negligence, nuisance, slander, defamation, breach of contract. Also included are pages of boilerplate recitations to various legal principals on immaterial and irrelevant areas of law, and various exhibits relating to prior actions in the state courts. Plaintiff also filed a Request for Emergency Injunctive Relief, a Motion for Appointment of Counsel, and an Application to Proceed Without Prepayment of Fees.

Plaintiff alleges she is a disabled person, suffering from Post Traumatic Syndrome and health concerns regarding noise. Essentially, the crux of Plaintiff's complaint stems from her neighbors use of "harsh chemicals" in the building, which she claims adversely effects her health. She seeks to enjoin her neighbors and to ensure that the landlord and the

2

police department stop her neighbor from using these
chemicals. Plaintiff also seeks damages, and an order
enjoining two children from running in the hallway.
Alternatively she wants her landlord to provide her with an
air purifier and to "supply an immediate place of refuge, such
as a hotel/motel."  She also seeks to have her neighbors pay
for Plaintiff's moving expenses, and if the NBHA refuses to
give Plaintiff a renewal on her extended rental, to enjoin
them as a defendant.  (Complaint at page 42).  In Plaintiff's
"further prayer for relief" she requests a jury trial,
appointment of counsel, appointment of special counsel to
"oversee accordance with orders, to [s]top violations and
retaliation and barring nuisances", and monetary damages for
"pain and suffering", "emotional distress", "humiliation", and
"injury to reputation".  (Complaint at 43).

    1. <u>Factual Allegations</u>

    More specifically, the Plaintiff's factual allegations
are as follows:

    Plaintiff receives Section 8 housing assistance and has
lived at her current residence at 111 Talman St. since October
1, 2004.  (Complaint at 3).  The defendant neighbors moved
into the building in October, 2004.  (Complaint at 4).
Plaintiff sent a letter to her landlord and NBHA requesting

accommodations regarding her post-traumatic stress disorder and her health and safety (intolerance to inhalants). (Complaint at 4). Plaintiff states that her landlord assured her of compliance, but compliance was never given. (Complaint at 4). Plaintiff claims that on October 4, 2004, in the presence of her landlord, she brought the same letter to her neighbors asking for compliance. (Complaint at 5). Plaintiff states that they were "reluctant, confused, and combatant about compliance." (Complaint at 5). Plaintiff contends that on October 6, 2004 one neighbor told Plaintiff that she had spoken to her attorney, and was told "just to ignore her down there". (Complaint at 7). Then the neighbor "started yelling (in the hall) defaming remarks to the 1st fl tenant who was now in the hall: 'You're a nut; you are crazy, etc… Don't disturb the lady on the 2nd floor, she is ill.'" (Complaint at 7).

On October 16, 2004 defendant neighbors used a "very strong Pine-Sol ammonia type cleaner," forcing Plaintiff to suffer sinus pain. (Complaint at 5). Plaintiff "retreated from the building, and left a 2nd copy of my ADA request for accommodation letter, as well as a doctor letter, documenting Plaintiff's extreme intolerance to inhalants." (Complaint at 5). Two days latter Plaintiff went to St. Lukes Hospital as a

result of the defendant neighbors's use of a "stinky, cheap spray." (Complaint at 5)

On January 1, 2005 Plaintiff smelled a strong ammonia smell in the stairway, and put a fan in the window. (Complaint at 6). Plaintiff claims that the neighbors continually shut the fan off, and that she called her landlord for help, but he refused to come until the following Monday, and called an hour later without aid. (Complaint at 6). Subsequently she called the defendant New Bedford police department, who told her that they didn't blame the neighbors for shutting the fan off since it was cold, and left without talking to the neighbors. (Complaint at 6). After the police left Plaintiff claims that the neighbors yelled "you're crazy lady, you need help, you need a psychiatrist." (Complaint at 7).

The Plaintiff posted signs in the building in October 14, 2004 and November 20, 2004, that said to "please be quiet" and "to please avoid using harsh chemicals beyond this point." (Complaint at 6). She contends the defendant neighbors ripped them down. (Complaint at 6).

2. <u>Prior State Court litigation</u>

Based on the underlying circumstances and allegations, it appears that Plaintiff previously applied for emergency

injunctive relief in the New Bedford District Court and the Bristol County Superior Court. (See BRcv2004-01186).

Plaintiff's motion for emergency relief and damages, filed October 21, 2004, in the New Bedford District Court, named her landlord, Ronald Savaria. The motion sought an order directing Savaria to instruct the new tenants (Ebony, George and Troy) from using inhalants in the hallway, and to inform all new tenants of avoiding use of such chemicals. Upon inquiry of this Court, the state court clerk advised that that motion had been denied.

While not entirely clear, it appears that Plaintiff renewed a motion against the same defendants, for emergency injunctive relief one day later, on October 22, 2004, in the Bristol Superior Court. There, Plaintiff submitted a motion for ex-parte immediate injunction, tort damages, a waiver of her Section 8 cap to allow her to move, and for the landlord to supply her with an air sanitizer.

On October 29, 2004 the Bristol County Superior Court denied the request for relief, based on an insufficient showing of the likelihood of success. It also appears that on the same day, the matter came before Justice John P. Connor, Jr., and the case was reported settled. It was thereupon ordered that an agreement for judgment or stipulation of

6

dismissal as to certain defendants was to be filed by December 29, 2004, failing which, the clerk was directed to enter judgment dismissing the Complaint, and all other claims, without prejudice and without costs. (Exhibit E., page 1). A dismissal has not, however, yet been entered on the record.

3.  New allegations

Plaintiff's complaint in the state court case is alleges specific instances of conduct by the defendant landlord (Savaria) and neighbor (Ebony), that are virtually identical to those incidents named in the current complaint. Specifically, Plaintiff talks about incidents on October 4th, 16th, and 18th, 2004 involving her upstairs neighbor. The current complaint names "Ebony and Charles Warland (and brother)" as defendants, and talks about the same incidents in the complaint.

It appears that the only new contention raised by the Plaintiff is against the New Bedford Police Department and/or the specific officers alleged to have arrived on the scene. Plaintiff seeks damages against them for "failure to help enforce Plaintiff ADA remedies (property rights) under 'The Olmstead Decision', MGL's etc., and oral discrimination/slander." (Complaint at page 2, ¶2(b)). As

7

explained below, this court lacks jurisdiction over these claims.

DISCUSSION

I.    Plaintiff's Application to Proceed Without
      Prepayment of Fees is Allowed.

Plaintiff has submitted an Application to Proceed Without Prepayment of Fees and Affidavit, indicating that she is currently receiving SSI in the amount of $678 per month, $40 in food stamps, and has $3.00 in cash and no other assets. Accordingly, Plaintiff has demonstrated she is without sufficient funds to pay the $150 filing fee, and her Motion for leave to proceed without prepayment of fees is Allowed.

II.   Plaintiff's Claims Are Subject To Preliminary
      Screening Pursuant To 28 U.S.C. §1915

Because Plaintiff has sought permission to proceed in this action without prepayment of the filing fee, her complaint is subject to the screening provisions of 28 U.S.C. §1915. See 28 U.S.C. §1915 (proceedings in forma pauperis). Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), fails to state a claim on which relief may be granted, or seeks

8

monetary relief against a defendant who is immune from such relief.[1]  See 28 U.S.C. §1915(e)(2).

III. Plaintiff's Complaint Is Subject To Dismissal

Although the Court recognizes that *pro se* complaints must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), plaintiff's claims in this case are nevertheless subject to dismissal.  Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to include in his complaint, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard sets forth a relatively low pleading threshold, and generally, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations

---

[1]Claims lack an arguable or rational basis in law when they are brought against a defendant who is clearly entitled to immunity or involve the infringement of a legal interest which clearly does not exist.  See Neitzke, 490 U.S. at 327-328 (interpreting the former §1915(d)); accord Denton, 504 U.S. at 32 ("clearly baseless" actions may be dismissed); Mack v. Massachusetts, 204 F. Supp.2d 163, 166 (D. Mass. 2002) (dismissing for lack of subject matter jurisdiction). Complaints containing claims based on indisputably meritless legal theories or factual allegations that are clearly baseless may be dismissed *sua sponte* and without notice.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  Actions may be screened and dismissed prior to the issuance of summonses. See Neitzke, 490 U.S. at 324 (review may occur prior to issuance of process to spare prospective defendants the inconvenience and expense of answering defective complaint).

contained in the complaint.  <u>Swierkiewicz v. Sorema N.A.</u>, 534
U.S. 506, 514 (2002).

Here, Plaintiff's complaint fails to meet even this low
threshold.  For instance, Plaintiff makes claims against her
neighbors, yet the identities of each neighbor with whom she
specifically had altercations or contact is unclear. It
appears she has had dealings with "Ebony", however, it is
unclear what the nature of her dealings were with the
unidentified defendant, known as "Brother", or what her
dealings were with respect to defendant Charles Warland.
Moreover, Plaintiff cites to various statutes, regulations,
and case law, without specifically addressing how the
defendants have allegedly violated such provisions.  The
complaint does not clearly set forth each cause of action with
respect to each defendant in such a way as to permit the
defendants a meaningful opportunity to respond to the
allegations contained therein.  Accordingly, on this basis
alone, the Plaintiff's complaint is subject to dismissal.

IV.  <u>Lack of Subject Matter Jurisdiction and Claim
     preclusion</u>

A.        <u>Rooker-Feldman Doctrine.</u>

To the extent that Plaintiff's claims against her
landlord and her neighbors for use of hazardous chemicals have
been raised and finally concluded in state court, this Court

lacks jurisdiction to review the merits of those claims, under the Rooker-Feldman doctrine.

It is well settled that lower federal courts are without subject-matter jurisdiction to sit in direct review of state court decisions pursuant to the Rooker-Feldman[2] doctrine. See, e.g., Hill v. Town of Conway, 193 F.3d 33, 34 (1st Cir. 1999) (citing Wang v. New Hampshire Bd. of Registration, 55 F.3d 698, 703 (1st Cir. 1995)) (describing Rooker-Feldman doctrine)). The jurisdiction to review state court decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court. See Feldman, 460 U.S. at 482-86; Rooker, 263 U.S. at 415-16.

The Rooker-Feldman doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 286 (1983) ("Federal district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of

---

[2]The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Hill, 193 F.3d at n. 1 (describing history of doctrine).

11

judicial proceedings even if those challenges allege that the state court's action was unconstitutional.") (internal quotation omitted); accord Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994) (Rooker-Feldman doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights); Mandel v. Town of Orleans, 326 F.3d 267, (1st Cir. 2003) (Rooker-Feldman doctrine precludes a lower federal court from entertaining a proceeding to reverse or modify a state-court judgment or decree to which the assailant is a party). Thus, to the extent that Plaintiff seeks review of the state court rulings, her claims are subject to dismissal. Hill, 193 F.3d 33 at 34. Here, Plaintiff's federal claims asserted under the Fair Housing Act of Americans with Disabilities Act and other various state causes of action, appear to be "inextricably intertwined" with the state court proceedings, since Plaintiff's prior requests for injunctive relief and damages against the defendant landlord and neighbors were heard and raised in the state court proceedings. See Hill v. Town of Conway, 193 F. 3d 33, 39 (1st Cir. 1999). The New Bedford Court and the Bristol Court were faced with the identical

12

issues raised in the instant action, and Plaintiff's damage claims were dismissed.   Thus, any decision in this case might effectively vacate the holdings in those courts.

Accordingly, since the Plaintiff's issues were already considered and decided in state court, this Court lacks jurisdiction under the <u>Rooker-Feldman</u> Doctrine[3].

---

[3]Additionally, without deciding, it appears Plaintiff's claims against defendants based on the alleged October 2004 incidents with her landlord and neighbors may be subject to dismissal based on an equittable estoppel theory or "non-mutual claim preclusion."  Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action.   <u>Havercombe v. Dep't of Educ.</u>, 250 F.3d 1, 3 (1st Cir. 2001) (citation omitted). *Res judicata* requires (1) a final judgment on the merits in an earlier action; (2) an identity in the causes of action in the earlier and later suits; and (3) an identity of parties or privies in the two suits.   <u>Kale v. Combined Ins. Co. of Am.</u>, 924 F.2d 1161, 1165 (1st Cir. 1991); <u>accord</u> <u>Daluz v. Dep't of Corr.</u>, 434 Mass. 40, 45, 746 N.E.2d 501, 505 (2001) (same).
"Nonmutual claim preclusion" is an expansion of *res judicata* doctrine that abandons the requirement of mutuality, permitting a non-party defendant in a prior action to raise the defense of *res judicata*.   <u>See</u> <u>Andrews-Clarke v. Lucent Techs., Inc</u>., 157 F. Supp. 2d 93, 99 (D. Mass. 2001) <u>citing</u> <u>In re El San Juan Hotel Corp.</u>, 84 F.2d 6, 10 (1st Cir. 1988)). Thus, because Plaintiff could have raised the claims in the state court, the instant claims against the defendant neighbors Charles Warland and "Brother" could be subject to dismissal. However, because it does not appear that there was a final judgment on the merits (state case was dismissed without prejudice), the Court will not dismiss this action on these grounds, even though the instant complaint is sufficiently identical because it involves the same transactions or occurrences. <u>See</u> <u>Manego v. Orleans Board of Trade</u>, 773 F.2d 1, 5 (1st Cir. 1985) (adopting Restatement (Second) of Judgments § 24 standard).

B.    <u>Abstention</u>.

To the extent that Plaintiff is complaining about matters which have not been fully resolved and which are pending in the state court[4], the Court must abstain from reviewing these claims.

In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court held that federal courts are required to abstain from issuing federal court injunctions in situations where, absent bad faith, harassment, or a patently invalid state statute, there is a pending state criminal proceeding.  <u>Younger</u>, 401 U.S. at 54.  The <u>Younger</u> doctrine has been extended to apply to proceedings that are closely related to criminal proceedings, including certain state enforcement and administrative proceedings and matters involving important public interests. <u>See, e.g.</u>, <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 594 (1975) (nuisance); <u>Juidice v. Vail</u>, 430 U.S. 327, 334-335 (1977) (civil contempt); <u>Trainor v. Hernandez</u>, 431 U.S. 434, 444-447 (1977) (attempt by state to recover fraudulently-obtained welfare benefits); <u>Moore v. Sims</u>, 442 U.S. 415, 423-426 (attempt by state to obtain child custody); <u>Ohio Civil Rights</u>

_____

[4]It appears that the Bristol County Superior Court case will be shortly, or has just recently been dismissed, and Plaintiff may have appeal rights which have not been pursued as a result.

Comm'n. v. Dayton Christian Schs., Inc., 477 U.S. 619, 627-629
(1986) (state administrative proceedings involving important
state interests).

Thus, where Plaintiff has not shown she is without
remedies in the state court with respect to the same matters
she is now trying to raise in this Court, this matter is
subject to dismissal.

V.    This Court lacks jurisdiction over Police defendants

Plaintiff seeks damages against two police officers for
"failure to help enforce Plaintiff ADA remedies (property
rights) under 'The Olmstead Decision', MGL's etc., and oral
discrimination/slander." (Plaintiff's Complaint at page 2,
¶2(b)).  It is not completely clear from the Plaintiff's
complaint why her claims against the New Bedford Police
Department officers are entitled to relief under any of these
theories.

First, the "Olmstead decision" deals with wire-tapping,
an issue not at all present in this case.  See Olmstead v.
U.S., 277 U.S. 438 (1928).  Second, Plaintiff has not clearly
set forth any federal causes of action in order to invoke the
jurisdiction of this Court over the claims against the police
defendants.  She alleges violations of  "MGL's" or
Massachusetts General Laws, as well as state tort claims such

15

as defamation.  There does not appear to be any independent
federal question presented against these defendants, nor does
there appear to be diversity jurisdiction under 28 U.S.C.
1332.  The complaint states no independent federal statutory
claim under 28 U.S.C. 1331.  Moreover, because there appears
to be no valid federal claim to anchor the state claims, this
Court would decline to exercise its supplementary jurisdiction
under 28 U.S.C. §1367.  Moreover, the claims against these
defendants are not supported only by bold assertions, without
any underlying factual basis, and this Court deems these
claims as presented, to be both frivolous and vexatious.

Accordingly, the Plaintiff is directed to show cause why
her claims against the police defendants should not be
dismissed for lack of jurisdiction.


VI.  Plaintiff's request for injunctive relief

A.          Standard for preliminary injunctive relief

As noted previously, Plaintiff seeks an "emergency
injunction" from this Court against her landlord and her
neighbors to stop using "harsh chemicals in her building, and
to enforce this rule against her neighbors.

This Court may issue a preliminary injunction or
temporary restraining order only when the Plaintiff

demonstrates: 1) he or she will suffer irreparable harm absent the injunction; 2) the injury outweighs the harm to the defendants if granted; 3) he or she is likely to succeed on the merits of the case; and 4) the injunction does not adversely affect the public interest. Planned Parenthood League of Mass. V. Bellottt, (641 F. 2d 1006, 1009 (1st Cir. 1981); see Weaver v. Henderson, 984 F. 2d 11, 12 (1st Cir. 1993); Merrill Lynch, Pierce, Fenner & Smith v. Bishop, 839 F. Supp. 68, 70 (D. Mass. 1993) (extending four part test to temporary restraining orders.)

A Plaintiff seeking preliminary injunction must give notice to the adverse parties. Fed. R. Civ. P. 65(a)(1). To the extent Plaintiff seeks ex-parte relief, the notice requirement may be waived for a temporary restraining order only if "(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's or attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. Fed. R. Civ. P. 65(b). The same four factor test used for

preliminary injunctions applies for temporary restraining

orders.  See Levesque v. State of Maine, 587 F. 2d 78, 80 (1st

Cir. 1976); Butler v. Maine Sup. Juc. Ct. 758 F. Supp. 37, 38

(D. ME. 1991).         B.   Failure to comply with notice
requirements

Since Plaintiff has failed to demonstrate that she served

the present motion on the defendants she is barred from

seeking a preliminary injunction.  Furthermore Plaintiff

failed to certify to this Court her efforts to give notice to

the named defendants in this action; and therefore is barred

from seeking a temporary restraining order.  Plaintiff's

failure to certify her efforts is sufficient by itself to deny

the request[5].  See Thompson v. Ramirez, 597 F. Supp. 726, 726

(D. P.R. 1984) ("requirements of Rule 65 ... are not mere

technicalities, but establish minimum due process. These

requirements must be strictly complied with to obtain ex parte

relief.") (citations omitted).

C.   Failure to demonstrate irreparable harm.

Although Plaintiff alleges she is suffering irreparable

harm, she has failed to provide sufficient facts to support

---

[5]It is also noted that prior to filing this action,
Plaintiff made telephonic inquiry of this Court (via the
Clerk's Office) on at least two occasions regarding the filing
of her complaint and the request for injunctive relief, and
she was directed to the requirements contained in Fed. R. Civ.
P. 65.

that claim.

D.    <u>Likelihood of Success</u>

For the reasons set forth above, this Court finds that Plaintiff lacks a sufficient likelihood of success on the merits of her case.  This likelihood is "critical" to a successful application for a preliminary injunction, and failure to satisfy the requirement bars injunctive relief. <u>See</u> <u>Weaver v. Henderson</u>, 984 F. 2d 11, 12 (1st Cir. 1993). Plaintiff's failure to show sufficient likelihood of success on the merits alone constitutes sufficient grounds for denial. <u>See</u> <u>New Comm Wireless Servs., Inc. v. Sprintcom, Inc</u>., 287 F. 3d 1, 13 (1st Cir. 2002). As noted above, the <u>Rooker-Feldman</u> and <u>Abstention</u> doctrines bar Plaintiff's litigation in this court on the grounds she presents. Moreover, the failure to plead her claims in accordance with Rule 8(a) is also fatal here.

E.    <u>Effect on Public interest</u>

As noted previously, Plaintiff has twice sought, and has been twice denied, preliminary injunctions in two state courts based on the same claims and grounded in the same factual foundation as the present federal action. (<u>Compare</u> Plaintiff's Complaint at ¶¶17, 19, and 20, <u>with</u> Plaintiff's Exhibit E at ¶2; (both relate to specific instances on dates October 4,

2004, October 16, 2004, and October 18, 2004 regarding "Ebony's" use of "strong pine cleaner/chemical" and Ronald Savaria's failure to respond to Plaintiff's complaints). As a matter of judicial jurisprudence and public policy, Plaintiff's attempts to seek relief in this Court on matters presented to another court, merely because she is dissatisfied with the decisions of that other court, cannot be sanctioned.

Accordingly, since Plaintiff fails to meet any of the requirements of Rule 65, her motion for preliminary injunctive relief is denied.

VII.    <u>Motion for appointment of counsel</u>

Under §1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1). However, a civil plaintiff lacks a constitutional right to free counsel[6]. <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991) (citations omitted). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness

_____

[6]There is no authority for this court to pay for counsel appointed to civil litigants such as the Plaintiff. Any appointment of counsel would therefore be contingent upon the availability of *pro bono* counsel to voluntarily accept an appointment. (<u>Cf</u>., 18 U.S.C. §3006A, appointment of counsel in habeas petitions under 28 U.S.C. §2241, §2254 and motions under §2255).

impinging on the party's due process rights.  Id.  To
determine whether there are exceptional circumstances
sufficient to warrant the appointment of counsel, a court must
examine the total situation, focusing on the merits of the
case, the complexity of the legal issues, and the litigant's
ability to represent him or herself.  Id. at 24 (citations
omitted).

In accordance with this standard Plaintiff's request for
counsel is denied.  While Plaintiff's ability to pay for
counsel may constitute a genuine issue, this case fails to
present an exceptional circumstance warranting appointment of
counsel, especially in light of the dubious merits of the case
as set forth in this Memorandum and Order.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby ORDERED:

1.   Plaintiff's motion to proceed without prepayment of fees
     is Allowed;

2.   Plaintiff's motion for injunctive relief is Denied;

3.   Plaintiff's motion for appointment of counsel is Denied;

4.   Plaintiff is ordered to show cause within thirty-five
     (35) days of the date of this Memorandum and Order why
     this action should not be dismissed for the reasons
     stated herein.

Dated: February 16, 2005          /s/ Mark L. Wolf
                                  MARK L. WOLF
                                  UNITED STATES DISTRICT JUDGE

21