*Alison J. Ethier*
111 Tallman St. 2W  -  New Bedford, MA 02746  -  (774) 202-1002  -  AllyShaley@MS.OFFICE

FILED

2005 FEB 28  P 2: 02

U.S. DISTRICT COURT
DISTRICT OF MASS

February 23, 2005

TO: US District Court - MLW
RE: Ethier v. Savaria, Warland, NB Police Dept.: CA 05-10174; Mem./Order of 2-16-05

Please allow a transfer of this case to Appellate Div./ SJC for review.

It is evident that my claim/brief of 1-17-05 was not handled adequately and grossly misconstrued and appears contradictory regarding filing requirements.

My immediate claim and request was for an immediate injunction to enforce my "ADA Reasonable Accommodation Request"; to ask tenants to avoid use of chemical toxins flowing into my hall to Def. #2 (3rd fl. tenant) by Def. #1 (landlord). Claim was filed on 1-20-05 and was not treated as an emergency injunction.

My backup and proof of prior repercussions were in Tort; also requesting an Attorney.

In the interim, I have received eviction notices and now have to appear for a hearing.

Memorandum and Order is very confusing and distortions of facts to ref. in my claim are corrected below. (This seems to be an ongoing, consistent, catastrophe in language reception and expression between parties and presentment to judges; . . . must be a legal strategy. - No one really wants to know the truth/facts.)

1. p. 2 ¶ 1: "NB Police Dept. Officers L. Cabral and G. Fortes . . not named as a defendant"
They are named as Def. #3 "in their individual capacities" as ref. Def. #3 (LC & GF); and "no state immunity for violations of ADA"; p. 16 C.47.; also, "under the color of the law" p. 31. #112.a.

2. p. 2 ¶ 3: " . . enjoin . . police dept. to stop . . using chemicals."
NO! Only in tort for damages, as they did not enforce police duty. Def. #3 (LC & GF) were enjoined to do their job of protecting my property from trespassing of my property and damages for Discrimination.

3. p. 2 ¶ 3: " . . and order two children from running in the hallway."
My claim was not to ask the judge to order this; rather to enforce my ADA request and rights for FHA "quiet enjoyment of residence" to Def. # 1 (LL), hence, LL to tenant; Def. #3 (EW) to control their visitors.

4. p. 3 ¶ 1: " . . seeks to have her neighbors pay for Plaintiff's moving . . "
NO! I asked for Def. #1 (LL) to pay for relocation if injunction is denied and I can't move due to 3rd fl. tenants use of toxic chemicals in common hall.

5. p. 3 ¶ 1: ". . if the NBHA refuses to give Plaintiff a renewal on her extended rental "
This is only if the conditions inhibiting my moving are a direct result of Def. #1 and Def. #2 abuse and negligence. [NBHA really should be enjoining me as a Plaintiff in this case, as the NBHA contract has been violated by Def. #1 (LL).]

6. p. 3 ¶ 3: ". . Plaintiff . . . current residence . . since Oct. 1, 2004." Correction: NO! Oct. 1, 2001.

7. p. 4 ¶ 2: typo: latter = s/b later?

8. p. 5 ¶ 1: "After the police left Plaintiff claims the the neighbors yelled . . . . "
NO! Read p. 7 #29 again: As the police left, . . the Police yelled . . . (discriminating remarks) -

9. p. 5 ¶ 2: "She contends the defendant neighbors ripped them down."
NO! I saw them (Ebony) rip them down (thru my door peep hole) in anger with verbal remarks.

10. Ref. p. 6 ¶ 2: Correction: Justice Connor ordered "agreement for judgment or stipulation of dismissal" to NBHA only, as NBHA had agreed to waive the CAP of transfer benefit for moving.

11. p. 7 ¶2: "This court lacks jurisdiction . . "
I do not see why, as I receive Federal Funding for housing thru Sect. 8/NBHA, and ADA is a federal/USC/Constitutional claim. (See Ref. p. 8. #29.; p. 10. #37 (i) 4; p. 14 #45; p. 16. C. #47; p. 19. #62 - 63.; p. 20. #71; p.22. E. (Intro.); p. 22. #75; p. 23. #83; p. 24. #88./1.; p. 28. #98.; p. 28. #100.; p. 28 - 31. #103. to 112; p. 38. #133. (Also, see # 15 below.)

12. p. 8.& 9 ¶ 1: ". . fails to state a claim . . ." . .& .." . . showing the pleader is entitled to relief.".
"MRCP 12(b)(6): "A complaint should not be dismissed for failure to state a claim [upon which relief can be granted . . and must must take the complaint's factual allegations as true . . "], ref. p. 38 #132.

13. p. 9 ¶ 2: " . . meeting low threshold . . "
Besides being pro-se, it should be clear that 1.) I made an ADA accommodation request; 2.) Landlord did not enforce it with new tenants; 3) Damages resulted.

14. p. 9 ¶ 2: " . . . dealing with . . "brother" . . and Charles Warland."
I have had no dealings with 3rd floor tenants other than my first visit to request compliance to avoid harsh chemicals on 10-4-04 and other complaints about them (disturbances, nuisance) to the landlord. The allegation is that one of them used a strong toxic chemical, during the day, when the men are at work. The landlord approached them and admitted to him that Ebony was cleaning on each day that the toxins were eliminated into the common hall.

15. p. 10 - 11: RE: "Rooker-Feldman Doctrine"
This is a new claim enforce Plaintiff's ADA/FHA/Civil, Human, and common courtesy rights, based on tort of past damages for abuse and neglect, etc., by defendants. "Sect. 504 Rehab act is the remedy to redress rights and preempts other actions for Equal Protection an Due Process under the 5th Amend. for disability discrimination. Venue is Title VII of Civil Rights (29 USC 1391 (e) and should be based on common-sense."

16. p. 14: "This Court lacks jurisdiction over Police defendants."
This case should have been an Original Jurisdiction – **Article III**
Now may be other type of cases. **Martin**

http://lw.law.de.edu/BCSA/rulings/ConLaw/12Justice.pm

"14 th Amendment may allow citizen to sue a state exercise of authority under § 5 is proportional
to evil to be prevented " -- **Alden, FL Prepaid**

VIOLATION of SUBSTANTIVE DUE PROCESS: The State did not exercise police power, nor even talk with 3rd
floor tenants to investigate their invasion of my private property use, which was ultimately needed to avoid their
initial abuse/cause of toxic chemicals. = I had no relief!  – **Pennell, East. Ent.**
physical invasion; nuisance – **Miller**, – **Loretta, Yee**

17. p. 14 ¶3: Ref. "The Olmstead Decision"
The wiretapping reference is not the point to my claims. It is this:

http://www.xxx-xxxxxxxxxxxxxxx/IMPACT_Volume12_Issue1.pdf

"A January, 2000, letter to State Medicaid Directors from the Departments of Health and Human Services and
Justice in reference to the Olmstead Decision noted that:  This decision confirms what this Administration already
believes: that 'no one should have to live in an institution or nursing home if they can live in the community with
the right support' and that Olmstead challenges states to prevent and correct inappropriate institutionalization
and to review intake and admission processes to assure that people with disabilities are served in the most
integrated setting appropriate. The Olmstead Decision, the advancing state-of-the-art in providing community
services, and the accomplishments of "institution-free" states challenge all states to develop and sustain
effective, community-based behavior support and crisis response services. For many states this will be difficult
because
a) they have focused their behavior support resources and personnel in institutions;
b) they and their private contractors have often come to view these institutions as the "appropriate" places for
people who present behavioral challenges;
c) state and private community agencies have often developed a mutually reinforced tendency of accepting that
institutions are the place to send people with challenging behavior when they are uncomfortably difficult for
community agencies to serve; and
d) as a result of limited involvement among states and localities in responding to highly challenging and crisis
behavior in the community, many have limited technical and experiential capacity to do so.

There have been, however, a number of states and local agencies that have responded responded to these
same challenges in developing community behavior support and crisis response programs. These lessons
learned in their development include the importance of acknowledging and responding to mental health
conditions among persons with MR/DD; valuing and incorporating professionals with different psychological,
medical and social perspectives; attending carefully and responding seriously to what people are saying through
their behavior; committing to people and their right to live in the community; and building the capacity within
community organizations and families to reduce and respond to behavioral episodes without outside intervention.
The experience of these states and agencies offers substantial hope that with appropriate community support all
persons with intellectual and developmental disabilities, including those with serious behavioral and psychiatric
conditions, can be and can remain residents of homes and neighborhoods in typical communities."

The 2 Police officers (as members of a departmental agency) failed to respond to help me/my property.

18. p.15. ¶ 4.: 1) I have already suffered irreparable harm due to prior injunctions not ordered; 2) the injuries did outweigh any harm to defendants, as they can use many other substitute cleaners, 3) the defendants have admitted to these claims and retaliate by continuing to do so, and 4) no adverse affect to public interest, but may be a positive one for public interest, - "Clean Air" act.

19. p.16 -17: "Failure to comply with notice requirements."
NO! I have not served, sent certified briefs (yet) - due to courts pre-screening pro-se rules in filing an indigency waiver. I've been waiting for summons' or authorization from the court to be able to send certified briefs. I asked Sue Giness to contact me if anything was needed to be added, fixed, or done. I did not receive any notice nor even a docket number until I called myself.

20. p. 17. ¶2: "Failure to demonstrate irreparable harm."
I do not know what more provisions you need to support my damages/illnesses, other than dragging witnesses, and doctors into court. (See #12 above.)

21. p.17 ¶3: "Likelihood of Success": again, see #12 above. I was directed to ruled FRCP 65, but not 8(a) as written.

22. p.18 ¶2: "Effect on Public interest"
All prior cases have been dismissed with no prejudice.
Ref. " . . merely because she is dissatisfied with the decisions of that other court . . "
I am not just dissatisfied; I'm trying to breathe! - trying to survive; I have no help or support. In reading the rights of the disabled in ADA manuals, it appears that the disabled do have rights; but enforcing them does not seem to be available, anywhere!

23. p.18 ¶4: "Motion for appointment of counsel"
ADA recipients do have a right to counsel. (See **42USC 3613(b); Civil Rights 11:490; Developmentally Disabled Assistance and Bill of Rights Act 2000** (42 USC §15001/15021/15041//15061/15081//15111/) (per **53 AMJ §89**)

**(29 USC 701; 42 USC 12101**, etc.) excerpts: The Congress finds that—
-some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older; society has tended to isolate and segregate individuals with disabilities, discrimination against individuals with disabilities continue to be a serious and pervasive social problem; and persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; the disabled have often **has no legal recourse to redress such discrimination;** failure to make modifications to existing facilities and practices, the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free

society is justifiably famous, to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment

(<u>Yoder v. Roosevelt University, ADD 390 (ND IL 1994</u>).) Rehab. Act 504 for pro se plaintiff can be appointed if 1) potential merit is met (also not needed per #12 above) 2) issues are complex 3) plaintiff tried other efforts for counsel 3) having counsel will affect the outcome of the case.

24. P. 19 ¶2: ". . . fails to succeed on the merits . . ."
If I succeeded on the merits, I wouldn't need a lawyer!

Not having counsel could be considered discrimination.

Respectfully,

*Alison J. Ethier*

Alison J. Ethier
ae